2431Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 2431 | **DATE** | 9/17/2012 |
| **CASE TITLE** | U.S. Commodity Futures Trading Commission vs. Worth Bullion Group, Inc., *et al.* | | |

**DOCKET ENTRY TEXT**

The CFTC's application to enforce the administrative subpoenas [5] is granted.

■[ For further details see text below.]

Docketing to mail notices.

---

## STATEMENT

This is an action to enforce several administrative subpoenas served by the U.S. Commodity Futures Trading Commission ("CFTC") on respondents Worth Bullion Group, Inc. ("Worth"); Mintco LLC ("Mintco"); and Diamond State Depository LLC ("Diamond"). Worth is a precious metals wholesaler; Diamond is a depository for storing precious metals; and Mintco is a precious metals dealer and retailer. The CFTC is currently investigating whether respondents or any other entity engaged in retail commodity transactions have violated various sections of the Commodity Exchange Act. 7 U.S.C. §§ 1 *et seq.* The subpoenas seek documents relating to the purchase or sale of precious metals. Although respondents provided the relevant documents, they redacted names and contact information of customers, retailers, and intermediaries. The CFTC filed this action to obtain unredacted versions of these documents.

Respondents object on two grounds. First, they argue they are covered by the Right to Financial Privacy Act ("RFPA"), which provides that customers of a financial institution must be given notice and the opportunity to object before any disclosures are made. *See* 12 U.S.C. §§ 3401, 3402(2), 3405. Respondents assert that they will face substantial liability if they disclose customer information to the CFTC without first giving notice to their customers. Second, respondents argue that the materials already produced make it clear that the CFTC does not have jurisdiction over the transactions at issue because (among other reasons) the delivery of precious metals occurs within 28 days of the sale, thus taking it out of the ambit of 7 U.S.C. §2(c)(2)(D). We are not persuaded by either argument.

**I. Does the RFPA apply?** The notice and objection provisions in the RFPA are triggered only if respondents fall under the definition of "financial institution." This statute defines this term as "any office of a bank, savings bank, card issuer [], industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution." 12 U.S.C. § 3401. Both sides acknowledge that the statute does not provide any further

**STATEMENT**

guidance beyond this definition. Both sides further agree that there are no cases explicating what this definition means. (Resp. Br. at 9.) Respondents offer two arguments for why they fall within this definition.

First, they argue that Worth and Mintco qualify as a "consumer finance institution," which is the last term in the list of statutory terms, because they provide financing to customers who buy precious metals. (Diamond does not argue that it is a financial institution but claims it is covered by the RFPA because it is an agent of Worth and Mintco.) Financing generates approximately 80% of Worth's and 90% of Mintco's business. (*Id.* at 10.) Based on these and other facts, which the CFTC apparently has not disputed for purposes of this motion, respondents argue that Worth and Mintco perform functions "substantially similar" to those performed by the other entities set forth in the statutory definition. (*Id.*) Respondents are essentially making a type of plain language argument. Because they offer financing to customers who purchase their products, they believe they are a "consumer finance institution." While this argument is not illogical, we are not persuaded by it because we believe that the term "consumer finance institution" should be interpreted in light of the earlier terms in the statutory list, as is confirmed by the canon of statutory interpretation known as *noscitur a sociis,* which holds generally that words in a statute should be interpreted in light of their companions or associates. *See generally Black's Law Dictionary.* The earlier entities listed in the statute – such as bank and card issuer – are more traditionally and more consistently associated with the provision of financing. For respondents, the financing, although not insignificant, is not clearly the defining aspect of their business. This conclusion is evidenced by the first sentence of their response brief. "The Respondents in this case are Worth, a precious metals wholesaler, DSD, a depository for storing precious metals, and Mintco, a precious metals dealer and retailer." (Resp. Br. at 1.) This self-description focuses firstly on respondents' role in the sale of precious metals.

Second, respondents rely on a later-enacted statute, the Bank Secrecy Act ("BSA"), and point out that it contains the same phrase – "financial institution" – but that it specifically includes a "dealer in precious metals" in the list of entities that qualify under the definition. 31 U.S.C. § 5312 (a)(2). We find that this argument, if anything, undermines respondents' position. As an initial matter, as the CFTC notes, the BSA and RFPA were enacted for different purposes. (Reply at 20.) Moreover, no case has held that the two definitions should be interpreted the same way, and one federal appellate court has held that a pawnbroker, which like the precious metals dealer is specifically mentioned by name in the BSA, is *not* a financial institution under the earlier-enacted RFPA. *See Winters v. Bd. of Cnty. Comm'rs,* 4 F.3d 848, 852 (10th Cir. 1993) ("Congress did not intend for pawnbrokers or their customers to be afforded the protections given to financial institutions"). The BSA definition is longer and worded differently than the one in the RFPA. It contains more specific entities and they are broader in scope than the more traditional banking institutions listed in the RFPA. The BSA definition lists over 20 entities, including travel agencies, insurance companies, real estate companies, casinos, the U.S. Post Office, and companies selling cars, planes, and boats. 31 U.S.C. § 5312(a)(2). Respondents argue that when Congress enacts a statute and includes a term of art from a similar earlier statute, the term should be interpreted similarly. (Resp. Br. at 11 n.5). But here, the two statutes do not merely include the same exact phrase, but they both go on to explicitly spell out what they mean. If anything, the fact that the BSA specifically mentions dealers in precious metals suggests that it was not clear that this type of business was a financial institution based on a plain language interpretation. In sum, we find that the RFPA does not apply and therefore need not address the CFTC's alternative arguments.

**II. Jurisdiction.** In their second argument, respondents assert that the documents already produced to the CFTC are enough to show that jurisdiction over any possible future action is lacking. In making this argument, respondents concede at the outset that they face an uphill battle. As they correctly point out, courts generally decline to entertain pre-enforcement jurisdictional challenges in subpoena enforcement proceedings. (Resp. Br. at 15.) However, relying on the Seventh Circuit's decision in *EEOC v. Sidley Austin Brown & Wood,* 315 F.3d 696, 700-01 (7th Cir. 2001), respondents argue that such challenges may be

**STATEMENT**

brought where the agency's action constitutes an "abuse of judicial process" or where the "agency patently lacks jurisdiction." (Resp. Br. at 16.) Respondents further concede that such an argument can only work if the facts are clear and undisputed. As an example, respondents refer to the situation discussed in *Sidley*, where an employer only has eight employees and thus indisputably does not meet the minimum requirement of 20 employees to trigger the provisions of the ADEA. (Resp. Br. at 17.) According to respondents, the facts here are similarly plain and uncontested. The parties focus mostly on 7 U.S.C. § 2(c)(2)(D), which gives the CFTC jurisdiction over financed commodity transactions where the metals are not delivered within 28 days. According to respondents, the documents already produced – including customer account documents and the contracts – show that the deliveries in fact were made within 28 days. They claim that although the customer names are redacted from the documents, the documents still have a customer account numbers on them so that the CFTC should be able to match up various transactions and track the purchases and deliveries.

   After reviewing the voluminous briefs, including additional sur-reply briefs, we are simply not convinced that the facts are clear, as respondents claim. They are certainly not undisputed. In its reply brief, the CFTC explains that it has not been able to *independently* verify respondents' claims that they have obtained or segregated sufficient amounts of precious metals to meet their obligations to each customer or to verify respondents' claim that they have made actual delivery to these customers within 28 days. (Reply at 8.) In particular, a CFTC investigator named Melissa Glasbrenner examined the documents produced and attempted to verify whether Worth had sufficient metals on hand to satisfy customer obligations existing on one specific day (used as a test case). She reached a tentative conclusion that on this particular day there was a tentative shortfall of metals of approximately $69 million in market value. (*Id.*) In short, the CFTC believes the factual questions have not been resolved; that they are complex and are still under investigation; and that the CFTC therefore should be given some latitude to proceed with its investigation. We agree. It is true that respondents filed a surreply brief and raised counter-arguments as to why they think the Glasbrenner analysis was wrong, which in turn prompted the CFTC to file another brief, followed finally by one more brief by respondents. This back and forth in the briefing itself provides indirect evidence that the facts are neither settled nor easy to assess. This is not a clear-cut case such as where everyone agrees that a company has only 8 employees and does not meet the 20-person statutory threshold. For all the above reasons, the CFTC's application is granted.