# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 2431 | **DATE** | 11/8/2012 |
| **CASE TITLE** | U.S. Commodity Futures Trading Commission vs. Worth Bullion Group, Inc., *et al.* | | |

**DOCKET ENTRY TEXT**

Respondents' Motion For Stay Pending Appeal [58] is granted.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

    Before the Court is respondents' motion to stay pending the disposition of their appeal of this Court's September 17th order [Dkt. # 57], in which we granted the CFTC's application to enforce the administrative subpoenas, thus ending this case. The motion to stay was filed on September 27th. A few days later, respondents filed an emergency motion for a stay pending resolution of the motion to stay [Dkt. # 63]. At the hearing on both motions, this Court granted the emergency motion and set a briefing schedule on the motion to stay. [Dkt. # 67.] The parties have now completed briefing on that motion. In the interim, respondents filed their Notice of Appeal.

    Both sides agree on the legal test to be used in assessing whether to grant a stay pending appeal under Fed. R. Civ. Pro. 62(c). The Court in its discretion should consider these four factors set forth by the Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987): (1) respondents' likelihood of success on appeal; (2) whether respondents will be irreparably harmed if a stay is not granted; (3) whether a stay would cause substantial injury to other parties interested in the proceedings, and (4) where the public interest lies. (CFTC Br. at 4; Resp. Mot. at 5.) These factors are viewed on a sliding scale – if certain factors weigh more strongly in favor of a stay, then other factors need not be as strong. *Id.*

    In their briefs, each side presents arguments relating to each of the four factors. Many of the arguments are either directly or indirectly a repeat of the arguments on the merits. In this order, we will assume familiarity with those arguments and with the underlying facts already set forth in our September 17th order.

    As for the first factor, which concerns the merits of our ruling, respondents argue that the meaning of the phrase "financial institutions" under the Right to Financial Privacy Act ("RFPA") is a "question of first impression and thus open to a range of interpretations." (Reply at 3.) Respondents then argue that their businesses fall "squarely within the plain meaning" of the statutory language, which they believe is

"unambiguous" (a point slightly at odds with their first claim that the language is open to a "range of interpretations"). *Id.* Respondents next point to evidence they submitted showing that they extend financing to many of their customers to help them buy respondents' products. (Resp. Mot. at 7; Mildner Declaration at ¶ 7.) In response, the CFTC first argues that because respondents cannot cite to any legal precedent directly supporting their position, they are highly unlikely to succeed on appeal. (CFTC Br. at 6.) The CFTC next argues that even if respondents qualify as financial institutions, they cannot overcome the argument that § 3413(h)(1)(A) allows the CFTC to give them a certificate of compliance, which supposedly will take care of the respondents' concerns about customer lawsuits. (*Id.* at 6-7.) In their reply, respondents state that "such a certificate would provide no defense for Respondents since (a) they know the CFTC has not actually complied with the RFPA and (b) since it would be issued only after appeal and thus long after the challenged disclosure was made." (Reply at 2; *see also* 4-5.)

In assessing these arguments, this Court finds that respondents have at least some chance of success on appeal because, as both sides agree, the issue is one of first impression. We do not agree with the CFTC's position that respondents must have a case directly on point to claim that they likely will be successful. Each side can point to reasonable arguments concerning their interpretation of the plain language. It is, of course, a difficult task for a district court, having already ruled in favor of one side, to assess whether its own ruling is likely to be wrong. On balance, we find that this first factor not strongly dispositive for either side.

Turning to the second factor, irreparable harm, respondents argue that disclosing customer names will subject them to lawsuits from customers and will cause a loss of goodwill. To support these assertions, respondents submitted affidavits. One is from James Russo who manages and is actively involved in the day-to-day operations of Worth. He "communicated by phone with about a thousand Worth customers." (Decl. ¶ 3.) Many told Russo that "it is extremely important to them that their precious metals transactions remain private" and that they are "particularly concerned about whether the U.S. government knows about such transactions." (*Id.* ¶ 5.) A second affidavit is from Richard Zimmerman, president of Mintco. He is familiar with Mintco customers, many of whom have expressed that "they are very concerned about the privacy of their precious metals transactions and, in particular, whether the U.S. government knows about such transactions" and that they "would be extremely unhappy if Mintco disclosed their precious metals transactions to the U.S. Commodity Futures Trading Commission." (Decl. ¶¶ 5-6.) In response, the CFTC acknowledges that loss of sales may constitute irreparable harm, but the CFTC asserts that it is speculative to believe that if respondents' customers are extremely unhappy, they would then no longer do business with respondents. (CFTC Br. at 7.) The CFTC believes respondents' larger goal is "to impede the Commission's investigation of what may be a scheme to defraud precious metals customers of hundreds of millions of dollars." (*Id.* at 9.) We are more persuaded by respondents' arguments about the possible loss of customers. While the evidence is in some ways indirect and lacking in concrete examples, the CFTC has not suggested what other evidence respondents could or should have submitted. The second factor thus favors granting a stay.

As to the third factor, which concerns injury to other parties, the CFTC argues that it would be harmed because the information being sought goes to the heart of its investigation, which has been ongoing for many months. In particular, CFTC investigator Melissa Glasbrenner needs the information to be able to determine from the already produced documents whether Worth has delivered the correct quantity of metal for each customer. (CFTC Br. at 10-11.) Respondents again question, as they did in the earlier briefs, the accuracy of Glasbrenner's analysis and whether customer account numbers are sufficient to track purchases of each customer. In assessing this factor, while we are sympathetic to the CFTC's concern for delay, we do not find this factor outweighs the second factor. Respondents have already produced 47,300 pages of documents to the CFTC which can continue its investigation using these documents. In addition, on July 2nd, the parties entered into an agreed order requiring respondents to preserve electronically stored information. (Dkt. # 41.)

**STATEMENT**

Finally, as to the fourth factor, which is the public interest, respondents again appeal to the interest of their customers' privacy as embodied in the RFPA. The CFTC, on the other hand, points to the public's interest in allowing government agencies to enforce federal laws. In short, each side points to federal law and largely reiterates earlier arguments. We find this factor is basically neutral.

In sum, we find that a stay is warranted largely based on the second factor and the possible harm to respondents. In addition, although we believe our earlier ruling was correct, we recognize that the question is one of first impression and respondents therefore have some chance of convincing the appellate court of their position. In the end, the question of whether to grant a stay is given to this Court's discretion. After carefully considering the parties' arguments, we are persuaded that a stay is appropriate.